UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CARLOS ORTIZ and VICTOR
VALERIO, on behalf of themselves and
all others similarly situated,**

      **Plaintiffs,**

**v.**                                    **Case Number:  6:17-cv-01879**

**METTERS INDUSTRIES, INC. and
SAMUEL METTERS, an individual,**

      **Defendants.**

---

**SECOND JOINT MOTION FOR APPROVAL OF SETTLEMENT AND
INCORPORATED MEMORANDUM OF LAW**

The Parties, through their undersigned counsel, jointly file this Second Motion for Approval of the mutually agreed-upon terms of settlement in this action to ensure compliance with the Court's Request for Supplemental Briefing on the Parties' proposed FLSA Settlement.  Attached as Exhibit A is a revised FLSA settlement agreement that, if approved, would resolve the claims of 52 plaintiffs.  Importantly, each of the 52 opt-ins have reviewed, approved, and individually signed the Agreement.  As set forth herein, it is reasonable and should be approved.  In support thereof, the Parties states as follows:

### *New Supporting Facts*

1.      The Parties filed their First Motion seeking approval of their proposed FLSA settlement on May 3, 2019.

2.      On June 19, 2019, the Court entered an Order requesting supplemental briefing from the parties on below three issues:

a.      Whether Court must reach a final certification (or decertification) decision before approving the Settlement Agreement;

b.      If the Court must reach a final certification (or decertification) decision before approving the Settlement Agreement, whether and on what grounds final certification (or decertification) is appropriate in this case; and

c.      Whether the Court should, before considering approval of the proposed Settlement Agreement, (1) require the parties to provide notice to the opt-in Plaintiffs and conduct a fairness hearing, or at the least, (2) require the parties to provide a clearer statement to the Court confirming that the opt-in Plaintiffs have been provided with notice of the settlement and an adequate opportunity to object.

3.      Since that time Plaintiffs' counsel sent the attached revised agreement, attached hereto as Exhibit A, to every Plaintiff via electronic mail.

4.      Thus, every single opt-in Plaintiff has been provided with a complete copy of Exhibit A and the opportunity to object, or not participate, in the settlement.   No objections were made.  And, in fact, every Plaintiff has signed the agreement.

5.      Attached hereto as Exhibit A is the slightly revised version of the same agreement the Parties previously submitted except that it seeks to include eight additional opt-in plaintiffs.   All 52 of opt-in plaintiffs electronically executed the agreement (*see* Exhibit A for signatures).

6.     Furthermore, the class members are each recovering approximately $1,826,[1] which is just $494.00 less than the $2,320 owed for the minimum wage claim for the time period at issue (8 weeks x $7.25 per hour x 40 hours = $2,320 amount owed for MW - $1,826 amount recovered in settlement = $494 difference).  Thus, there is no question the settlement is an excellent result for the class members.

7.     In response to the Court's above-three questions in its Order requesting supplemental briefing, the Parties jointly respond as follows:

    a.     In accordance with Chief Judge Merryday's decision from *Harris v. Performance Transportation LLC*, Case No. 8:14-cv-02913-SDMAAS (M.D. Fla. Oct. 27, 2016) (D.E. 114 and 115) and the majority of other FLSA collective action settlements approved by Courts in the Middle District of Florida, final certification is unnecessary to approve an FLSA collective action settlement;

    b.     Alternatively, even if final certification is required, it is appropriate here; and

    c.     The Court should find that Plaintiffs' counsel's efforts to notify the class members, including obtaining 52 of 52 signatures, constitutes sufficient notice and determine a final fairness hearing is unnecessary.

8.     In sum, the entire class has been offered the opportunity to review the attached revised settlement and the reactions were overwhelmingly positive.  Thus, it should be approved by Court.

---

[1] The original amount recovered per class member of $2,150 in the Parties' original settlement agreement was reduced to $1,826.92 per opt-in in the attached revised Settlement Agreement because eight more people have been added to the proposed settlement.  The gross recovery to the class of $100,000 has not changed.

### *Supporting Facts From the Prior Motion*

9.      Named Plaintiffs CARLOS ORTIZ AND VICTOR VALERIO, former employees for Corporate Defendant METTERS INDUSTRIES, INC. ("Corporate Defendant"), filed the instant lawsuit as a Collective Action alleging violations of the Fair Labor Standards Act (the "FLSA").[2] (Doc. 1).   On May 1, 2018, Plaintiffs filed a Second Amended Complaint, which is the operative Complaint in this action ("Complaint") brought against the Corporate Defendant and SAMUEL METTERS ("Metters" or "Individual Defendant").

10.      The Complaint alleges that Metters is an employer under the FLSA. Specifically, Plaintiffs allege that Metters, as CEO, oversaw the operations of the Corporate Defendant, had the authority to hire and fire employees, determined the work schedules of employees, set employee pay rates, controlled the finances and operation of the Corporate Defendant, and exercised significant day-to-day control over the Corporate Defendant.

11.      The Complaint alleges Defendants failed to pay minimum wage for a four-week to 60-day period prior to the closing of the closing of the Corporate Defendant's facilities.

12.      The Individual Defendant denies that he is an employer under the FLSA. Specifically, Metters denies that he in fact exercised the necessary day-to-day control over the Corporate Defendant's operations, including but not limited to, its payroll operations in order to qualify as an employer under the FLSA.

---

[2] The Plaintiffs also assert a Class Action claim under the WARN Act against Defendant Metters Industries, Inc., which has defaulted in this action.  Plaintiffs later, on December 4, 2017, amended their Complaint to include Samuel Metters as a Defendant. (Doc. 10).  This Motion addresses solely Plaintiffs' FLSA claim which is asserted against both the Corporate Defendant and Samuel Metters, individually.

48594322;2

13.    On December 20, 2018, Plaintiffs CARLOS ORTIZ, VICTOR VALERIO, CHARLES MARSHALL, HARRY STAFFORD, and MICHAEL MLACHAK, filed notices of consent to join the litigation. (Doc. 61-65).

14.    On January 28, 2019, the Court entered an order conditionally certifying a class consisting of all employees who were employed at the Corporate Defendant's Orlando facility between September 1, 20017 and October 27, 2017 (Doc. 73).

15.    Plaintiffs TELLY S. DAVIS, RONALD FORSYTHA, filed notices of consents to join the litigation on February 26, 2019 (Doc. 76-78)[3]; ANGEL L. GONZALEZ, ROBERT M. RAMIREZ, KENNETH W. ROUSSEAU,  DAVID C. LOEWER, JOHANN COLON, TARA SHOOK, EDWARD WALSH, MARK LESNIAK, HENRIQUE A. RAMOS, KIMBERLY SHUMAN, CHRISTOPHER LAYFIELD, filed notices of consent to join the litigation on March 4, 2019 (Doc. 79-89); SHANNON DAWKINS, HORACE GATHERS, SON VAN NGUYEN, KENNETH A. BROWN, JAMIE DENNARD, and IVELISS FELICIANO filed notices of consent to join this litigation on March 5, 2019 (Doc. 90-95); MICHAEL D. LUFFLER on March 7, 2019, WILBURN CHAFIN and DANNY HERNANDEZ on March 8, 2019 filed notices of consent to join this litigation (Doc. 98-100); LAMAR ROBBINS, RYAN O'KEEFFE, GUERLINE POPE, JOSEPH ROCH MOSZCZLENSKI, and MICHAEL KIMBLER, filed notices of consent to join this litigation on March 12, 2019 (Doc. 101-105); GLENN GORMAN and MARIBEL PELAEZ on March 13, 2019, JOHN R. SANDERS, JR. on March 15, 2019, and THOMAS CORNELISON on March 18, 2019, filed notices of

---

[3] Charles Marshall inadvertently filed a duplicate notice

48594322;2

consent to join this litigation;  (Doc. 106-109); GABRIEL CADET MARSEILLE on March 26, 2019, JUAN CORREA on March 27, 2019, and DARYL KRUG on March 28, 2019, filed notices of consent to join this litigation (Doc. 110, 113-114); and JAMES MEHLMAN on April 5, 2019, GERALD DEAROLF, DONALD BELL, and TARRANT NGUYEN on April 9, 2019, and ROGER VONGTHIRAJ on April 10, 2019, filed notices of consent to join this litigation (Doc. 116-120).  There were originally  forty-four (44) Plaintiffs in this action when the Parties submitted their original proposed settlement agreement.

16.    The Parties now request that eight additional opt-in Plaintiffs be permitted to join this settlement, ALLISON HERRING, CHRISTOPHER MONTIJO, BRIAN DUNVALEY, JAMES GODDARD, THOMAS WATT, SUSAN COX, JERRY MOSSOR, and JOHNNY AVERY, bringing the total number of opt-in Plaintiffs to 52. Their opt-in forms are attached hereto as Exhibit B.

17.    Importantly, Plaintiffs' counsel has obtained signatures from all 52 of the 52 Plaintiffs.

18.    On March 28, 2019, the Parties participated in mediation.

19.    There exists a genuine dispute as to Plaintiffs' FLSA claims against the Individual Defendant as Metters maintains that he is not an employer under the FLSA. Nonetheless, after considerable discussion, analysis, and negotiation, including the mediation on March 28, 2019, the Parties have reached a settlement in this matter that is a reasonable compromise of Plaintiffs' FLSA claim in light of the defenses to the claim, practicalities resulting from the financial issues facing the Individual Defendant, the status

48594322;2

of the Corporate Defendant, and the potential of Plaintiffs inability to collect on a judgment should they prevail at trial.

20.    The total damages recovered by the Plaintiffs totals $100,000. Based on the number of opt-ins this translates to a pro-rata recovery of approximately $1,826 per Plaintiff. This is an excellent result considering that each Plaintiff will be recovering nearly all of their actual damages (not including liquidated damages) as to their FLSA minimum wage claims under a forty hour work week calculation (8 weeks x $7.25 per hour x 40 hours = $2,320 amount owed for MW - $1,826 amount recovered in settlement = $494 difference.

21.    This settlement is also an excellent result for the Plaintiffs considering that the Corporate Defendant is in financial ruin, its operations are virtually non-existent, and it does not have the funds nor the capability of processing and issuing payroll checks to the Plaintiffs in this matter. *See* Metters Dec. ¶¶3-5.[4]  Additionally, Metters is an elderly man who suffers from Parkinson's Disease and has limited financial resources. In order to be able to contribute to the settlement in this matter, he agreed to pay $25,000 for unpaid wages, which he withdrew from his savings. This is the largest amount Metters believes he can contribute to a settlement and still have enough money in savings to pay for he and his wife's living expenses. *Id.* at ¶¶8-9. The other $75,000 recovered by Plaintiffs is being paid by insurance.

---

[4] References to the Declaration of Dr. Samuel Metters filed simultaneously with this motion are cited as follows, "Metters Dec. ¶ [paragraph number(s)].

22.     Although the Settlement Agreement in no way constitutes an admission of liability by either party, the consideration paid pursuant to the same constitute a mutually agreeable resolution of Plaintiff's claims.  The settlement is fair, reasonable and equitable to the Parties involved in this litigation.  Plaintiff's attorneys' fees were agreed upon separately and without regard to the payment to Plaintiff.

## MEMORANDUM OF LAW

There are two ways in which claims for overtime compensation under the FLSA may be compromised or released by an employee.  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).  The first, which has no application in the instant case, permits resolution of claims under the supervision of the United States Department of Labor.  *Id*.  The second, which does apply in the instant case, permits judicial approval of disputed claims on terms that are fair and reasonable:

> Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context.  The employees are likely to be represented by an attorney who can protect their rights under the statute.  Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching.  If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages that are actually in dispute, we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.  When asked to review and approve the terms of settlement under the FLSA, there is a "strong presumption" in favor of approval.  *Dail v. George A. Arab, Inc.*, 391 F. Supp. 2d 1142, 1146 (M.D. Fla. 2005).

8

I.    **The Settlement.**

The Settlement Agreement is attached hereto as Exhibit A.  Under the terms of the Settlement Agreement, Metters shall pay Plaintiffs the sum total of $25,000.00 as unpaid wages and his insurance carrier shall pay an additional sum of $75,000 for liquidated damages and a service award in settlement of Plaintiffs' claims.  In light of both the Corporate Defendant's financial status and inability to fund and process payroll checks, and Metters' financial status and status as an individual who also does not have a payroll mechanism, the Parties structured the settlement to include the engagement of a Third Party Administrator to handle the distribution of the settlement funds, withholding, and corresponding IRS Forms W2 and 1099.

Each Plaintiff's individual recovery is set forth in Exhibit A to the Settlement Agreement, and is proportionate to each Plaintiff's individual claim.  This is a good result for the Plaintiffs under these circumstances, especially considering that each Plaintiff will receive approximately $1,826.[5]  Additionally, the liquidated damages contribution made by the insurance carrier is almost three times that of Metters' wage contribution. The Parties recognize that this is a unique structure for an FLSA settlement and that ordinarily wages and liquidated damages would be equivalent. However, given the special circumstances of the Individual Defendant, complicated by the Corporate Defendant's status, the Parties believe that this settlement amount and structure fairly

---

[5] The Parties agreed to, subject to Court approval, provide Mr. Ortiz with a $5,000 service payment because of his active involvement in both originating and pursuing this action, paid in addition to his share of the pro-rata recovery.

48594322;2

balances the monetary amounts at issue in the case with the risks inherent in proceeding with litigation including the practicalities of collecting on a judgment rather than settling.

The settlement does not require Plaintiffs to waive or release any claims other than their FLSA claims against Defendants.  Nor does it require Plaintiffs to agree to any terms, such as confidentiality, non-participation in other claims, or a prospective waiver of any rights, that this Court has previously ruled to be impermissible in the context of an FLSA settlement.  *See Moreno v. Regions Bank*, 729 F. Supp. 2d 1346 (M.D. Fla. 2010); *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227 (M.D. Fla. 2010).

The settlement also provides that the insurance carrier will pay Plaintiffs' counsel the sum total of $100,000.00 in fees and costs.  This case has been litigated since November of 2017, involved written discovery, motion practice, and 52 different opt-in Plaintiffs.  Plaintiffs' fees and costs were negotiated separately from the amount payable to Plaintiffs under this settlement, and the Parties stipulate this sum is "reasonable" in light of the stage of the proceedings and the work performed to date by Plaintiffs' counsel.

II.    **There is No Requirement That A Collective be "Finally" Certified Prior to Approval of a Settlement Agreement.**

"In deciding whether a settlement is fair and reasonable, no binding precedent requires different treatment of a FLSA collective action and a FLSA individual action. Some district courts will consider final certification (i.e. whether the plaintiffs are similarly situated), while other district courts deem such consideration unnecessary." *Lockwood v. CIS Servs., LLC*, No. 3:16-CV-965-J-39PDB, 2019 WL 2226126, at *8 (M.D. Fla. May 3, 2019).  *Compare, e.g., Campbell v. Pincher's Beach Bar Grill Inc.*, No. 2:15-cv-695-FtM-99MRM, 2017 WL 3700629, at *1–2 (M.D. Fla. Aug. 24, 2017)

(unpublished), report and recommendation adopted, 2017 WL 3668889 (deeming

consideration of final certification unnecessary) *with Ruddell v. Manfre*, No. 3:14-cv-873-

J-34MCR, 2015 WL 7252947, at *1–3 (M.D. Fla. Nov. 17, 2015) (unpublished) (final

certification necessary).

      Importantly, a similar scenario arose in *Campbell v. Pincher's Beach Bar*

*Grill Inc*., No. 2:15-cv-695FTM99MRM, 2017 WL 3668889, at *1 (M.D. Fla. Aug. 25,

2017), as explained by the Court as follows:

> The Magistrate Judge directed the parties to brief the issue of whether a
> final determination as to certification of the class was required before a
> settlement could be approved. After review of the parties' Joint
> Supplemental Brief (Doc. #65), it was determined that review and approval
> was appropriate. The Magistrate Judge further required signatures of the
> opt-in plaintiffs to confirm that they were in fact afforded the ability to
> consider the terms of the settlement, and signed agreements were provided
> with the exception of Elizabeth Sellers who is deceased. The Magistrate
> Judge was satisfied that plaintiffs were afforded the ability to object, and
> that they did not object. As to Ms. Sellers, efforts will be made to provide
> her share of the settlement proceeds to her estate or appropriate heir. After
> due consideration of the Report and Recommendation, the Court accepts the
> Report and Recommendation of the Magistrate Judge. The Court will retain
> jurisdiction for a period of time to allow counsel to identify the heirs of Ms.
> Sellers, and defer the entry of judgment until expiration of this time period.

      The same outcome from *Campbell* should also follow here because, just as

in *Campbell*, the undersigned has collected and submitted approval (in the form of

signatures) from each opt-in plaintiff as to the proposed settlement.   Furthermore, while

the Eleventh Circuit recognizes a two-tiered process for collective actions, it is clear that

"[t]he second stage is triggered by an employer's motion for decertification." *Morgan v.*

*Family Dollar Stores, Inc.,* 551 F.3d 1233, 1261 (11th Cir. 2008). Moreover, this stage

takes place when discovery is substantially over, with the benefit of a "much thicker

record." *Anderson v. Cagle's*, 488 F.3d 945, 953 (11th Cir. 2007) (a decision on an appeal of a lower court's determination with respect to decertification in an ongoing litigation); *see Morgan v. Family Dollar*, 551 F.3d at 1261.

At the second stage, the plaintiff bears a heavier burden to defeat the defendant's position that the case should not proceed as a collective. *See id*. This two-tiered process necessarily contemplates adverse parties taking positions contrary to one another, where the Plaintiff bears a lower burden to defeat Defendant's position at Stage I, and a higher burden at Stage II. *See id*. There is no binding precedent requiring that a Stage II analysis be conducted prior to approving a collective settlement and courts in this district, including this Court, routinely approve collective settlements without a Stage II analysis. *Harris v. Performance Transportation LLC*, Case No. 8:14-cv-02913-SDMAAS (M.D. Fla. Oct. 27, 2016) (D.E. 114 and 115) (MERRYDAY, J.) (approving collective settlement without "final certification" analysis even where case was on eve of trial, discovery was closed, and motions in limine filed); *Isaacs v. One Touch Direct, LLC*, Case No. 8:14-cv-01716-JSM-JSS (M.D. Fla. Sept. 9, 2015) (D.E. 85) (MOODY, J.) (same).

The Parties respectfully note that the cases cited in the Court's Order requesting supplemental briefing at Doc. 124, p. 2, including *Ruddell v. Manfre*, No. 3:14-CV-873-J-34MCR, 2015 WL 7252947, at *1 (M.D. Fla. Nov. 17, 2015); *Hosier v. Mattress Firm, Inc.*, No. 3:10-CV-294-J-32JRK, 2012 WL 2813960, at *2 (M.D. Fla. June 8, 2012), *report and recommendation adopted*, No. 3:10-CV-294-J-32JRK, 2012 WL 2838610 (M.D. Fla. July 10, 2012*); and Burton v. Util. Design, Inc.*, No. 607-CV-1045ORL-22KRS, 2008 WL 2856983, at *2 (M.D. Fla. July 22, 2008), do not cite any Eleventh Circuit

precedent for proceeding to Stage II outside of the context of a motion for decertification. Thus, not only are they not binding, they are not persuasive, nor do they overcome Judge Merryday's decision from *Harris v. Performance Transportation LLC*, Case No. 8:14-cv-02913-SDMAAS (M.D. Fla. Oct. 27, 2016) (D.E. 114 and 115) (MERRYDAY, J.), or any other cases cited herein that approved FLSA collective action settlements without a Stage II analysis.

In fact, with respect to Eleventh Circuit precedent, each of these cases, *Ruddell*, *Hosier*, and *Burton,* cite only *Anderson v. Cagle's*, which, as noted above, declares that the Stage II analysis typically is conducted in response to a motion for decertification and in any event after "discovery is largely complete and the matter is ready for trial[.]"  That is simply not the case here as that matter is nowhere near ready for trial. 488 F.3d at 953. In addition, none of these decisions indicates whether the record had been sufficiently developed in discovery to merit a Stage II analysis.  Significantly, none of these decisions suggests that the plaintiffs in those cases raised the impropriety of conducting a Stage II analysis prior to settlement approval. *See Ruddell, Hosier, Burton, supra*. In fact, the parties in *Burton* agreed to decertification rather than addressing the issue.   Therefore, particularly given that these cases are in the minority -- with most FLSA collective approvals being entered without a Stage II analysis -- the Parties respectfully submit that these cases are not persuasive authority mandating a Stage II analysis prior to settlement approval. *See*, *e.g., Stuven v. Texas de Brazil*, Case No. 8:12-cv-1283-T-24-TGW (M.D. Fla. March 14, 2014) (D.E. 103) (BUCKLEW, S.); *Moultry v. Cemex*, Case No. 8:07-cv-453-T-MSS (M.D. Fla. August 20, 2008) (D.E. 145) (SCRIVEN, M.); *Czopek v. Tbc Retail*

13

*Grp., Inc.*, No. 8:14-CV-675-T-36TBM, 2016 WL 7116112, at *2 (M.D. Fla. Nov. 7,
2016), *report and recommendation adopted*, No. 8:14-CV-675-T-36TBM, 2016 WL
7104187 (M.D. Fla. Dec. 6, 2016) (approving collective settlement without Stage II
analysis even where a portion of the settlement was specifically allocated to "non-
qualifying plaintiffs.").

   In sum, a Stage II analysis would be improper. In fact, while the Parties did
exchange documents and information related to pay and time necessary to complete a
comprehensive damages analysis prior to mediation, and for the purpose of mediation, the
record before the Court with respect to the factual disputes in the case is nearly identical to
that which was before it at the time of Plaintiff's Motion for Conditional Certification.
While the Parties pointed out, in their Motion for approval, issues that might have arisen
at the decertification stage, and which influenced each side's perception of what a fair
resolution of the disputed issues might be, no record is yet built which would enable the
Court to determine whether those issues merit decertification. In fact, the Parties' hard
work to resolve the case squarely in Stage I, and before the substantial sums that would
have been spent in discovery to get to Stage II, is precisely what renders this analysis
improper.

  **III.**  <u>**Alternatively, if the Court rules Final Certification is Necessary to**</u>
    <u>**Approve the Settlement, Final Certification is Warranted.**</u>

   But, even if the Court determines final certification is required for approval
of an FLSA collective action settlement, final certification is warranted here.

   "The FLSA authorizes collective actions against employers accused of
violating the FLSA." *See Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th

48594322;2

Cir. 2008) (citing 29 U.S.C. § 216(b)). Specifically, 29 U.S.C. § 216(b) provides that " '[a]n action...may be maintained against any employer...by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.' " *Id.* (quoting 29 U.S.C. § 216(b)) (alterations in *Morgan*). Accordingly, "to maintain a collective action under the FLSA, plaintiffs must demonstrate that they are similarly situated." *Id.* (*citing Anderson*, 488 F.3d at 952).

A collective action under the FLSA is different from a class action under Rule 23, Federal Rules of Civil Procedure (Rule(s)). *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996) ("[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of, and unrelated to, the requirements for class action under Rule 23....") (citation omitted). "In a Rule 23 class action, each person who falls within the class definition is considered to be a class member and is bound by the judgment, favorable or unfavorable, unless he has opted out. By contrast, a putative plaintiff must affirmatively opt into a § 216(b) action by filing his written consent with the court in order to be considered a class member and be bound by the outcome of the action." *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1216 (11th Cir. 2001) (internal citations omitted). The Eleventh Circuit Court of Appeals has "suggested that district courts deciding whether to certify a collective action [under § 216(b)] engage in a two-stage analysis...." *See Anderson*, 488 F.3d at 952 (*citing Hipp*, 252 F.3d at 1218). The first determination is made at the so-called "notice stage." At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.

The second determination is typically precipitated by a motion for "decertification" by the defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice. The class representatives—i.e. the original plaintiffs—proceed to trial on their individual claims. *Cameron-Grant*, 347 F.3d 1240, 1243 n.1(*quoting Hipp*, 252 F.3d at 1218).

If the Court determines that final certification is necessary to approve the FLSA settlement agreement in this case, resolution of the Parties' Motion for Approval would require application of the second stage of the two-tiered analysis —that is, determination by the Court as to whether the claimants are similarly situated.  At the second stage, a court considers factors "such as: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant[s] [that] appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Morgan*, 551 F.3d at 1261 (quotation omitted).

Applying the second-stage analysis, the court in Bredbenner found that final certification was appropriate:

> The factual circumstances underlying the claims of each putative class members are very similar, not disparate. Each … worked overtime during the relevant class period, received overtime pay pursuant to a common formula, and each claims the same relief under the FLSA. The class as a whole is therefore "similarly situated" to the class representatives. Second, the Court cannot envision any individualized defenses that would interfere

with final certification. In any case, the concern with individualized defenses is that they may pose case management problems. However, the Court need not account for case management issues because, much like the Rule 23 analysis, the class is being certified for purposes of settlement.

*Bredbenner v. Liberty Travel, Inc.,* Case Nos. 09-905, 09-1248, 09-4587, 2011 WL 1344745, at *16-17 (D.N.J. Apr. 8, 2011) (internal citations omitted).

Unlike in many FLSA cases involving disputes over whether certain individuals are entitled to minimum wage/overtime pay because they were, for example, misclassified as independent contractors, here it is undisputed that Defendants simply failed to pay all of the Plaintiffs minimum wage for their several last weeks of employment. Furthermore, as this Honorable Court held when it granted Plaintiff's Motion for Conditional Class Certification, Plaintiffs have demonstrated that they are similarly-situated.  (Doc. 73, pp. 4-6).

The class members were all employees of Defendant within the defined class period, worked similar hours, and were not paid minimum wage.  In fact, the main dispute in this case between Dr. Metters -- the only Defendant who is party to the proposed settlement agreement because Defendant Metters Industries, Inc. is in default -- is not whether Plaintiff and the class members were entitled/not paid to minimum wage but, rather, whether Dr. Metters should be considered an "employer" for liability purposes under the FLSA.  Therefore, Dr. Metters would be making the same argument and presenting the same defense against Plaintiff and the class members. There are no individualized defenses weighing against final certification. Additionally, certifying this collective action will eliminate the need for all 52 class members to file individual lawsuits and allow all class members to benefit from the settlement that has been reached on their

behalf. In consideration of the foregoing, the Court should finds that Plaintiffs and those individuals that have opted-in to this action are similarly situated and final certification is appropriate. *Ruddell v. Manfre*, No. 3:14-CV-873-J-34MCR, 2015 WL 7252947, at *3 (M.D. Fla. Nov. 17, 2015)

    **IV.**    **<u>A Fairness Hearing is Unwarranted in Light of the 52 Obtained Signatures from the Opt-In Plaintiffs.</u>**

A fairness hearing is required as to a Rule 23 settlement because absent class members who have not agreed to be part of the case are bound by the result. *Woods v. New York Life Ins. Co*., 686 F.2d 578, 579–80 (7th Cir. 1982); *see also Morgan v. Family Dollar*, 551 F.3d at 1259 ("Unlike opt-in collective actions under § 216(b), a district court's decision to certify a Rule 23(b) class binds all the class members"). This consideration is not at issue here, where each collective member has opted-in, affirmatively agreeing to be bound by the outcome of this matter. *See, e.g., Woods v. New York Life Ins. Co*., 686 F.2d at 579–80. (Unlike a Rule 23 class action, which "binds all members of the class unless they have expressly opted out of the class action," an FLSA collective member "must opt in to be bound.") (emphasis added); *Willix v. Healthfirst, Inc*., No. 07 Civ. 1143, 2011 WL 754862, at *5 (E.D.N.Y. Feb. 18, 2011) ("The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement because an FLSA settlement does not implicate the same due process concerns as does a Rule 23 settlement"); *Davis v. J.P. Morgan Chase & Co*., 775 F. Supp. 2d 601, 604–05 (W.D.N.Y. 2011) (noting that due process implications for Rule 23 settlements are greater than for FLSA collective settlements).

The Eleventh Circuit, too, has called the Rule 23 requirements "unrelated" to Rule 216(b). *See Grayson v. K Mart Corp*., 79 F.3d 1086, 1096 n. 12 (11th Cir.1996)

("[I]t is clear that the requirements for pursuing a § 216(b) class action are independent of,
and unrelated to, the requirements for class action under Rule 23 of the Federal Rules of
Civil Procedure."); *see also Cameron–Grant v. Maxim*, 347 F.3d 1240, 1244 (11th Cir.
2003) (detailing the wide range of differences between § 216(b) collective action and Rule
23 class action). However, the Court need not reach this issue, as each of the 52 Opt-Ins
have now reviewed and signed the revised agreement attached as "Exhibit A." The Parties
respectfully submit that this fully addresses the Court's concerns regarding approval of the
Agreement without a hearing, as all Opt-Ins have reviewed the Agreement, are aware of
the amount they will receive pursuant to the settlement and the amount of attorneys' fees,
and each of the 52 opt-ins have signed the Agreement.

### V.    A "Bona Fide" Dispute Exists.

*Lynn's Food Stores* permits approval of a compromise resolving a "bona
fide dispute over FLSA provisions." *Dees*, 706 F. Supp. at 1241. Parties requesting review
of an FLSA settlement must provide enough information to the Court to examine the bona
fides of the dispute. *Id.*

The Parties' respective positions on the merits of the case have been set
forth in the pleadings. Briefly, Plaintiffs were employed by the Corporate Defendant in
various capacities at its Orlando manufacturing facility. When the Corporate Defendant
experienced financial difficulties, Plaintiffs were unpaid for a period of time (the amount
of which is in dispute) prior to the facility's closure. Plaintiffs contend that Metters is also
liable as an individual employer under the FLSA. Defendant Metters contends that he did
not have the day-to-day oversight of operations, including payroll functions, necessary

under the FLSA for him to be considered an employer on an individual basis.  In short, the

Parties agree that a bona fide dispute exists as to whether Metters .

**VI.     All Factors Relevant to the "Fairness" of the Settlement Weigh in Favor of Approval.**

Although *Lynn's Food Stores* determined that the settlements at issue in that

case were unfair, it did not specify criteria for evaluating the fairness of proposed

compromises under different circumstances.  *See Dees*, 706 F. Supp. 2d at 1240.  This

Court has noted that the factors for evaluating the fairness of a class action settlement

provide a familiar starting point, including:

> (1) the existence of fraud or collusion behind the settlement; (2) the
> complexity, expense, and likely duration of the litigation; (3) the stage of
> the proceedings and the amount of discovery completed; (4) the probability
> of the plaintiff's success on the merits; (5) the range of possible recovery;
> and (6) the opinions of counsel.

*Id.* at 1241 (citations omitted).   Here, all factors weigh in favor of approval of the

settlement.

> a.     *There is no fraud or collusion behind the settlement.*

Courts have found no fraud or collusion where both parties were represented

by counsel and the amount to be paid to plaintiffs seemed fair.  *See Bonilla v. Shiner's Car

Wash*, 2014 U.S. Dist. LEXIS 66297, at * 5 (M.D. Fla. 2014).   Here, each party was

independently represented by counsel with substantial experience litigating FLSA claims.

At mediation, counsel advocated on behalf of their respective clients vigorously.  There

was no fraud or collusion behind the settlement.

> b.     *The complexity, expense, and length of future litigation militate in
> favor of the settlement.*

Litigating, rather than settling this matter, would require both sides to incur significant additional costs and fees. Trial was expected to last five to seven business days. Additionally, both sides would bear some risk if the case proceeded to trial. Plaintiffs would risk recovering nothing from Metters, and Defendant would risk the possibility of an adverse judgment and fee award. The losing side at trial would undoubtedly appeal the case, further lengthening the litigation. It is in the best interests of all Parties to settle, rather than litigate, this matter.

> c.    _The stage of the litigation weighs in favor of approval of the settlement._

This case was on the Court's November 2019 trial calendar at the time it settled. The parties had engaged in discovery and produced documents. Each side was aware of the other's factual and legal arguments. The Parties were in a position to thoroughly evaluate the merits of their respective claims and defenses.

> d.    _Plaintiffs' probability of success on the merits is uncertain._

As discussed above, Plaintiffs' probability of success on the merits is not a certainty. Plaintiffs would have to prove at trial that Metters had sufficient day-to-day oversight of operations at the Corporate Defendant to be considered an employer under the FLSA, which he denies. Thus, the amounts recovered by the Plaintiffs are imminently fair and reasonable. As set forth above, every single opt-in Plaintiff has been provided with a complete copy of Exhibit A and the opportunity to object, or not participate, in the settlement. Plaintiffs' counsel obtained signatures on the revised settlement agreement as to all of the 52 opt-in plaintiffs. This unanimous approval to the Settlement strongly favors final approval. *See In re Checking Account Overdraft Litig.,* 830 F. Supp. 2d 1330, 1343

21

(S.D. Fla. 2011) ("near 'unanimous approval of the proposed settlement[] by the class members is entitled to nearly dispositive weight in this court's evaluation of the proposed settlement[].'"); *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("The lack of objection to the settlements suggests that the terms are satisfactory to those affected.").

> e.    *The Parties weighed the opinions of counsel in deciding whether to settle.*

The Parties agree they weighed the opinions of their respective counsel in deciding whether to settle.

## VII.    **The Attorneys' Fees to be Paid as Part of the Settlement are Fair and Reasonable.**

This Court noted in *Dees* that a compromise must award the plaintiff's counsel a reasonable fee. *See Dees*, 706 F. Supp. 2d at 1243. The Court need not, however, scrutinize the amount of a plaintiff's attorneys' fee when it was agreed upon separately and without regard to the amount paid to the plaintiff, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney. *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009); *see also Dees*, 706 F. Supp. 2d at 1243 (quoting *Bonetti*). Such is the case here. The fee to be paid under this settlement to Plaintiffs' counsel, $100,000.00, was negotiated separately from the amount to be paid to Plaintiffs. The settlement is reasonable on its face, including the fee amount. Plaintiffs' counsel began prosecuting this case in November of 2017. After successfully having this case conditionally certified as a collective action, Plaintiffs' counsel received opt-ins from

52 people, a remarkable 50%+ of the individuals sent consent-to-join forms.  Handling

such a large number of clients required significant time and resources.   This is further

evidenced by the fact that Plaintiffs' counsel obtained signatures from 52 different

individuals over the last few weeks, which was an incredibly time consuming task.

In sum, Plaintiffs' fees and costs were negotiated separately from the

amount payable to Plaintiffs under this settlement in accordance with *Bonetti*.  The Parties

stipulate this sum is "reasonable" in light of the stage of the proceedings and the work

performed to date by Plaintiffs' counsel.

## **CONCLUSION**

The Court should approve the settlement of this action.  The settlement sum fairly balances the amounts Plaintiffs would seek at trial against the risk that Plaintiffs might recover nothing if the case were to proceed and the financial status of the Defendants. Additionally, Plaintiffs' counsel will receive a reasonable fee in connection with the settlement.  All factors germane to the Court's consideration of the fairness of the settlement weigh in favor of approval.

**WHEREFORE**, the Parties respectfully request that this Honorable Court (i) GRANT this Motion; (ii) APPROVE the settlement of this matter; and (iii) ENTER an Order dismissing the FLSA claims in this case with prejudice.

DATED this 22nd day of July, 2019.

Respectfully submitted,


WENZEL, FENTON, CABASSA, P.A.          AKERMAN LLP
110 N. Florida Avenue, Suite 300,              420 South Orange Avenue, Suite 1200
Tampa, FL  33602                                      Orlando, Florida 32801
Telephone: (813)                                       Telephone:    (407) 423-4000
Facsimile: (813)                                        Facsimile:     (407) 843-6610


By: _s/ Brandon J. Hill_                     By:   _s/Lillian Chaves Moon_
Luis A. Cabassa                                   Lillian Chaves Moon
Florida Bar No. 0053643                       Florida Bar Number 0365210
lcabassa@wfclaw.com                          lillian.moon@akerman.com
Brandon J. Hill                                    Sara A. Brubaker
Florida Bar No. 37061                          Florida Bar Number 0105769
bhill@wfclaw.com                               sara.brubaker@akerman.com


and                                                   Attorneys for Defendant,
                                                        SAMUEL METTERS

BLACKROCK TRIAL LAWYERS
201 S Westland Avenue

48594322;2

Tampa, Florida 33606
Telephone: (813) 254-1777
Facsimile: (813) 254-3999

By: *s/ Chad A. Justice*
Chad A. Justice
Florida Bar No. 121559
chadjustice@blackrocklaw.com

Attorneys for Plaintiffs, CARLOS
ORTIZ and VICTOR VALERIO, on
behalf of himself and others similarly
situated

48594322;2